IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ERNEST L. JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:15-CV-4237-DGK |
| GEORGE A. LOMBARDI, et al., | ) ) ) |
| Defendants. | ) |

## ORDER DENYING A PRELIMINARY INJUNCTION AND DISMISSING THE COMPLAINT

Plaintiff Ernest L. Johnson ("Johnson") faces imminent execution by lethal injection. In this civil action, he challenges the constitutionality of the State of Missouri's proposed execution protocol as it applies to him. He alleges that, in light of his brain tumor and its resulting impairments, he will experience violent, uncontrollable seizures if the State executes him with the drug pentobarbital, as it intends to do.

Now before the Court are two motions. One is Johnson's motion for a temporary restraining order and a preliminary injunction (Doc. 5). The other is Defendants' motion to dismiss the Complaint for failing to state a claim (Doc. 7). For the reasons below, the motion for a restraining order and injunction is DENIED, and the motion to dismiss is GRANTED.[1]

**Background**

Taking the factual allegations in the complaint as true and crediting Johnson with all reasonable inferences, the Court views the relevant facts as follows. *See Zink v. Lombardi*, 783

---

[1] Because all of Johnson's allegations, taken as true, do not entitle him to a temporary restraining order or preliminary injunction under Rule 65, the Court denies his request for an evidentiary hearing. *See United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002).

F.3d 1089, 1093 (8th Cir. 2015) (en banc) (Rule 12(b)(6) standard); *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002) (Rule 65(a) standard).

Three times, a Missouri state court jury has sentenced Johnson to death for murdering three gas station employees in 1994. *State v. Johnson*, 244 S.W.3d 144, 149–50 (Mo. 2008). The Supreme Court of Missouri has set Johnson's execution for November 3, 2015.

The State plans to accomplish the lethal injection by using pentobarbital. A barbiturate, pentobarbital causes death by depressing the central nervous system, including portions of the brain. During the execution, medical personnel will monitor the prisoner from an adjoining room, but no medical personnel will be present next to Johnson as the pentobarbital enters his bloodstream. The State has no procedures dictating what happens if the pentobarbital fails to kill Johnson.

Johnson suffers from an atypical parasagittal meningioma brain tumor, which is a slow-growing tumor that develops on the meninges, the tissue surrounding the brain and spine. In August 2008, he underwent craniotomy surgery and had part of the tumor removed. The surgery significantly affected Johnson's brain; it scarred some tissue and destroyed other tissue in the area of the brain responsible for the movement and sensation of the legs. The tumor, brain scars, and lost parts of the brain collectively disrupt his electrical brain activity, causing violent and uncontrollable seizures. After Johnson began suffering from seizures, he started taking anti-seizure medications.

Using pentobarbital risks triggering violent and uncontrollable seizures in Johnson. Thus, an execution carried out with pentobarbital might cause him to seize and experience a significant muscle pain alternatively described as "severe," "extreme[]," and "excruciating." Compl. ¶¶ 21, 33 (Doc. 1). The seizure may be self-limiting, or it could last for a prolonged

period of time. Because medical professionals will not be in the execution chamber when the pentobarbital is administered, if he experiences a seizure and severe pain, no one will be able to quickly soothe it.

Missouri law also permits execution by lethal gas. Mo. Rev. Stat. § 546.720.1. Johnson alleges that this method of execution "would significantly reduce the substantial and unjustifiable risk of severe pain" to him. Compl. ¶ 56.

On October 22, 2015—less than two weeks before the scheduled execution—Johnson commenced this action against Defendants George A. Lombardi, David Dormire, and Troy Steele, who are all employees of the Missouri Department of Corrections. The sole count in Johnson's complaint charges that using a pentobarbital-based lethal injection on him will constitute cruel and unusual punishment, which is prohibited by the Eighth Amendment, as applied to the State of Missouri by the Fourteenth Amendment and enforceable through 42 U.S.C. § 1983. He seeks an injunction against the pending execution.

## Discussion

The Court considers two motions in turn: Johnson's motion for a preliminary injunction, and Defendants' motion to dismiss the Complaint for failing to state a claim.

**I. Because Johnson does not establish the likelihood of success on the merits, the Court denies his motion for a preliminary injunction.**

Johnson moves for a preliminary injunction that prohibits Defendants from executing him with pentobarbital. *See* Fed. R. Civ. P. 65(a).[2] A preliminary injunction serves "to preserve the status quo until, upon final hearing, a court may grant full effective relief." *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993). Accordingly, in a ruling

---

[2] Johnson also moves for a temporary restraining order on the same grounds. A temporary restraining order is issued without notice to the opposing parties. Fed. R. Civ. P. 65(b)(1). Because Defendants have responded to the motion, the request for a temporary restraining order will be considered as a request for a preliminary injunction.

on a motion for a preliminary injunction, a court may consider "evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

In deciding whether to grant a preliminary injunction, the Court balances: (1) the likelihood that the moving party will prevail on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; and (4) the public interest. *Glossip v. Gross*, 135 S. Ct. 2726, 2736 (2015). These factors must be "balanced to determine whether they tilt toward or away" from granting the injunction. *W. Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). An injunction is an extraordinary remedy and Johnson bears the burden of establishing the need for such relief. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).

### A. Because Johnson has failed to identify a feasible, readily implementable execution procedure, the Court finds he will not likely succeed on the merits.

The Court first considers whether Johnson will likely succeed on the merits of his Eighth Amendment claim. The Eighth Amendment prohibits the State from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. To challenge an execution protocol as "cruel and unusual," a prisoner must establish two elements: (1) that the proposed method is "sure or very likely" to cause him serious, needless pain, and (2) a better, available method of execution. *Glossip*, 135 S. Ct. at 2737.[3] A prisoner may challenge an execution protocol as applied to just him. *Bucklew v. Lombardi*, 783 F.3d 1120, 1127 (8th Cir. 2015) (en banc).

Assuming for the sake of argument that Johnson can establish the first element—that a pentobarbital-based lethal injection cocktail presents a substantial risk of serious harm—he is not likely to prove that there is a better, available method of execution. "A condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or

---

[3] In lieu of the second element, a prisoner may allege "a purposeful design by the State to inflict unnecessary pain." *In re Lombardi*, 741 F.3d 888, 896 (8th Cir. 2014) (en banc). Johnson has not advanced this theory.

marginally safer alternative." *Baze v. Rees*, 553 U.S. 35, 51 (2008). Rather, he must prove: [a] an alternative method of execution "[b] that is feasible, [c] readily implemented, and [d] in fact significantly reduces a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737 (alteration removed).

Johnson has identified an alternative method of execution: execution by lethal gas. However, putting aside his bare assertion that "lethal gas is a feasible and available alternative method under Missouri law," Compl. ¶ 65, Johnson never explains how execution by lethal gas is feasible or could be readily implemented.

Feasibility asks whether the alternative method of execution is "capable of being done, executed, or effected." *Feasible*, *Webster's Third New International Dictionary* (2002). Yet Johnson does not indicate that the State has a working gas chamber or all the supplies necessary to operate such a chamber. Readiness of implementation asks whether the alternative method of execution can be used promptly, efficiently, or without delay. *Readily*, *Webster's Third New International Dictionary*, *supra*. Yet Johnson does not assert that the State can put a gas chamber into operation in a prompt fashion.

Simply because Missouri law *authorizes* the use of lethal gas for executions does not mean that the State is anywhere near prepared to actually *use* lethal gas for executions. *See* Mo. Rev. Stat. § 546.720.1. Similarly, the Missouri Attorney General's public comment—recounted in Johnson's suggestions in opposition—that the gas chamber is an "option" does not tell the Court anything about the feasibility or readiness of that "option."

Perhaps Defendants can easily establish a gas chamber. Just as likely, their ability to execute with lethal gas may depend on several adverse variables outside of their control. In any event, the Court cannot conclude at this time that Johnson is likely to prove feasibility and

readiness by a preponderance of the evidence. The Court thus finds that Johnson is not likely to prevail on the merits of his claim. *See Glossip*, 135 S. Ct. at 2737; *cf. Bucklew*, 783 F.3d at 1127 (reversing a district court's dismissal of an Eighth Amendment execution complaint, because the defendants had offered to tweak their lethal injection protocol to accommodate the plaintiff's disability, thereby conceding that alternative measures were feasible and readily implemented). This factor strongly weighs against a preliminary injunction.

### B. Johnson will suffer irreparable harm if he is executed unconstitutionally.

Second, Johnson must establish that he will suffer irreparable harm if the State executes him with pentobarbital. Irreparable harm is present when legal remedies are inadequate. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959). A preliminary injunction may issue for future occurrences of irreparable harm. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

Once the execution process begins, Johnson cannot pursue a remedy for any harm caused by the pentobarbital. If he is ultimately correct that the use of pentobarbital will cause him excruciating pain, then he will suffer irreparable harm if the Court denies a preliminary injunction and permits Defendants to proceed with Johnson's execution. This factor slightly favors a preliminary injunction.

### C. The equities do not favor granting an injunction to Johnson.

The third injunctive consideration is the balance between the irreparable harm to Johnson and the injury to Defendants. On the one hand, if no injunction issues, Johnson faces a risk of an unconstitutionally painful death, taking his allegations as true.

On the other hand, "a State retains a significant interest in meting out a sentence of death in a timely fashion." *Bucklew*, 783 F.3d at 1128. Johnson claims that "temporary relief may

cause a short, finite delay in the execution," Pl.'s Br. at 7 (Doc. 5), but as explained above, he provides no basis for his assertion that Defendants can rapidly and cost-effectively adopt his preferred method of execution. And because Johnson appears to have sat on his rights for some time, any impending harm remediable by injunction is at least somewhat of his own creation. He has had all facts necessary to prosecute his claim for almost two years. He has known about his brain defects since 2008, and, according to him, the State has planned to use pentobarbital in executions since November 2013. Notwithstanding, he delayed filing this case until twelve days before his execution is set to occur.

The Court finds the parties' equities to be in balance, and so this factor does not favor an injunction.

### D. A preliminary injunction would not serve the public interest.

Finally, the Court must balance whether an injunction would serve the public interest. The Court finds the public interest considerations to be the parties' individual considerations on a larger scale. Therefore, the public interest is neutral, and so does not favor an injunction.

### E. Because the favors do not tilt toward granting a preliminary injunction, the Court will not issue one.

Only one factor favors issuing a preliminary injunction, while two are neutral and one—likelihood of success on the merits—strongly disfavors issuing one. On this basis, Johnson has failed to carry his heavy burden. *See W. Publ'g Co.*, 799 F.2d at 1222; *Lankford*, 451 F.3d at 503. The Court declines to issue an injunction. Johnson's motion is denied.

## II. The Complaint fails to state a claim upon which relief may be granted.

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted. When reviewing a complaint under Rule 12(b)(6), the court takes all facts as true and draws all reasonable

7

inferences in favor of the non-moving party.  *Zink*, 783 F.3d at 1098.  The court first assesses whether the complaint pleads sufficient facts to state a claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration removed).  Legal conclusions "are not entitled to a presumption of truth when considering the sufficiency of a complaint."  *Zink*, 783 F.3d at 1098.  If the complaint pleads sufficient facts, the court then determines whether the complaint states a claim for relief that is plausible.  *Iqbal*, 556 U.S. at 678.

As discussed above, Johnson has failed to provide any facts establishing an essential element of his claim: that there is a feasible and readily implementable way to execute him.  *See Glossip*, 135 S. Ct. at 2737.  Instead, he makes a conclusory assertion that execution by lethal gas is a "feasible and available alternative method."  Compl. ¶ 65; *see Zink*, 783 F.3d at 1083.  Because Johnson failed to plead enough facts to state a claim to relief, the Court grants Defendants' motion.  *See Iqbal*, 556 U.S. at 678.  Johnson's complaint is dismissed without prejudice.

### III. The Court certifies this Order for interlocutory appeal.

Because Johnson's complaint is dismissed without prejudice, he is free to amend that complaint to remedy the deficiencies identified in this Order.  *See* Fed. R. Civ. P. 15(a)(1).  Thus, this is not a final order subject to appeal.  *See Coniston Corp. v. Vill. of Hoffman Estates*, 844 F.2d 461, 463 (7th Cir. 1988) (Posner, J.).  However, the Court appreciates that preparing and

8

filing an amended complaint, followed by preparing and filing a new motion for a preliminary injunction, will consume some of the precious little time remaining before the execution date.

Rule 54(b) permits the district court to certify an order for interlocutory appeal if it "expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Although the Court of Appeals "generally disfavor[s]" Rule 54(b) certification because of its "interest in preventing piecemeal appeals," *Clark v. Baka*, 593 F.3d 712, 714–15 (8th Cir. 2010), it may assume jurisdiction over a certified case if "there is some danger of hardship or injustice which an immediate appeal would alleviate." *Taco John's of Huron, Inc. v. Bix Produce Co.*, 569 F.3d 401, 402 (8th Cir. 2009).

The looming execution is a sufficiently compelling reason to permit Johnson to appeal, even though this Order does not finally adjudicate all of his claims. Moreover, if Johnson appeals, there will be no waste of judicial resources, because there will be no other claims at the district court level and the Court will not entertain any new motions while the case is before the Court of Appeals. Therefore, the Court certifies this Order for interlocutory appeal under Rule 54(b). *See id.*

**Conclusion**

In view of the foregoing, Johnson's motion for a temporary restraining order and preliminary injunction (Doc. 5) is DENIED. Defendants' motion to dismiss the Complaint (Doc. 9) is GRANTED. Johnson's complaint is DISMISSED without prejudice. This Order is CERTIFIED for interlocutory appeal under Federal Rule of Civil Procedure 54(b).

**IT IS SO ORDERED.**

Date:  October 27, 2015              /s/ Greg Kays
                                     GREG KAYS, CHIEF JUDGE
                                     UNITED STATES DISTRICT COURT