IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| ERNEST L. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-CV-4237-DGK |
| | ) | |
| GEORGE A. LOMBARDI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION TO DISMISS

A Missouri state court convicted Plaintiff Ernest L. Johnson ("Johnson") of first-degree murder and sentenced him to death. Johnson has exhausted all appeals challenging his conviction, and the State of Missouri is now ready to execute him. In this civil action, he challenges the constitutionality of the State's proposed execution protocol as it applies to him. He alleges that, in light of his brain tumor and its resulting impairments, he will experience violent, uncontrollable seizures if the State executes him with the drug pentobarbital as intended.

Now before the Court is Defendants' motion to dismiss (Doc. 33). As explained below, Johnson fails to state a plausible claim that the State's execution protocol is "sure or very likely" to induce a seizure. However, his claim is not barred by the statute of limitations. The motion is therefore GRANTED and the amended complaint is DISMISSED without prejudice.

**Background**

Less than two weeks before his execution date, Johnson commenced this action against Defendants George A. Lombardi, David Dormire, and Troy Steele, who are all employees of the Missouri Department of Corrections. The Court denied a stay of execution and dismissed the complaint for failing to state a claim (Doc. 12). Johnson appealed and moved for a stay of

execution. Without considering whether the Court had properly dismissed the complaint, the Court of Appeals denied the stay. *Johnson v. Lombardi*, 809 F.3d 388 (8th Cir. 2015) ("*Johnson I*"). The Supreme Court of the United States granted the stay and ordered the Court of Appeals to consider the merits of Johnson's appeal. *Johnson v. Lombardi*, 136 S. Ct. 443 (2015). Because the propriety of dismissing the complaint was not yet appealable, the Court of Appeals dismissed the appeal and returned jurisdiction to this Court. *Johnson v. Lombardi*, 815 F.3d 451, 452 (8th Cir. 2016). Johnson filed an amended complaint to cure the deficiencies that gave rise to the Court's dismissal.

Taking the factual allegations in the amended complaint as true and crediting Johnson with all reasonable inferences, the Court views the relevant facts as follows. *See Zink v. Lombardi*, 783 F.3d 1089, 1093 (8th Cir. 2015) (en banc).

A jury found Johnson guilty of murdering three gas station employees in 1994. *Johnson v. State*, 333 S.W.3d 459, 462 (Mo. 2011). Over the next seventeen years, Johnson's post-conviction challenges wended their way through the state courts. *Id.* Over that time, he was sentenced to death three times.

Meanwhile, in 2008, Johnson was diagnosed with a slow-growing brain tumor called an atypical parasagittal meningioma. Johnson underwent craniotomy surgery in August 2008, during which doctors removed fifteen to twenty percent of his brain tissue, but were unable to remove the entire tumor. Since the surgery, Johnson started having violent, uncontrollable, and painful seizures of indefinite length. He takes anti-seizure medications, but they do not suppress the seizures every time.

For a few years after the surgery, Johnson knew only that part of the tumor was still in his brain. An MRI scan in April 2011 showed that the surgery had scarred some of his brain tissue

and had left him with a brain defect.[1] Doctors concluded that the scarring tissue and brain defect, together with the tumor remnants, were disrupting electrical activity in the area of the brain responsible for the movement and sensation in his legs. This is what was causing Johnson's seizures.

Johnson's brain health is relevant because his condition will allegedly expose him to constitutionally unacceptable pain if the State of Missouri executes him as planned. The execution protocol dictates that non-medical personnel inject him with up to ten grams of pentobarbital, a barbiturate which depresses the central nervous system. Medical personnel will monitor the prisoner from an adjoining room, but no medical personnel will be present during the injections. The execution protocol is silent on what to do if ten grams is not enough to kill him. Nor is there a plan for what to do if the pentobarbital triggers seizures.

Johnson consulted a board-certified anesthesiologist, Joel Zivot, M.D. ("Dr. Zivot"), who concluded this protocol poses a "substantial and unjustifiable risk" of causing Johnson to have seizures. Am. Compl. ¶¶ 2, 21, 22, 34, 54, 58, 59, 62 (Doc. 31); *see also id.* ¶ 51 (labeling this a "significant and unjustifiable risk"). Once it enters his bloodstream, the pentobarbital will "interact[]" with his scarring tissue, brain defect, and remaining meningioma, thereby triggering seizures. *Id.* ¶ 21. These seizures, in turn, will give Johnson muscle pain alternatively described as "severe," "extreme[]," and "excruciating." *E.g.*, *id.* ¶¶ 21, 34, 35. This is in part because pentobarbital, pharmacologically, makes pain worse. The seizures will not be quick, and will prolong the execution. Because the State of Missouri does not station medical personnel inside the execution chamber, no one can do anything for Johnson if he begins seizing or if the pentobarbital fails to kill him.

---

[1] The amended complaint is unclear as to whether the scarring tissue *is* the brain defect, or whether they are separate impairments. For the purposes of resolving this motion, it matters only that doctors in April 2011 discovered *something* new that was wrong with Johnson's brain.

Johnson suggests there is a feasible, readily implementable alternative method of execution: the State could execute him by nitrogen-induced hypoxia. Missouri law already permits execution by lethal gas, Mo. Rev. Stat. § 546.720.1, and nitrogen, which is used commonly in welding and cooking, is easy to obtain. The State could acquire nitrogen, fit a hood or mask over his head, and then administer enough nitrogen to kill him painlessly.

The sole count in Johnson's amended complaint charges that by using pentobarbital instead of hypoxia to execute him, Defendants will inflict cruel and unusual punishment, which is prohibited by the Eighth Amendment as applied to the State of Missouri by the Fourteenth Amendment and enforceable through 42 U.S.C. § 1983. He seeks an injunction against the execution.

**Standard**

Defendants move to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted. When reviewing a complaint under Rule 12(b)(6), a court takes all factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court gives no such deference to "formulaic recitation[s] of the elements of a cause of action" and "legal conclusion[s] couched as" facts. *Id.* Thus, a plaintiff cannot coast on mere "naked assertion[s]" of wrongdoing, but rather must elaborate his bottom-line claim with some degree of "further factual enhancement." *Id.* at 557.

The court then determines whether those facts state a "plausible" claim for relief. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 556 (asking "for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful activity]").

4

The complaint does not have to show a "probability" that the defendants acted unlawfully, but it must do more than suggest the "sheer possibility" that they did. *Iqbal*, 556 U.S. at 678. And that is all a complaint establishes when it alleges facts that are "merely consistent" with a theory of liability—that is, allegations that fail to discount an "obvious alternative explanation." *Twombly*, 550 U.S. at 557, 567.

This endeavor is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court should bear in mind that "[t]here is no requirement for direct evidence; the factual allegations may be circumstantial." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015). "The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id.* at 946 (alteration removed).

## Discussion

Defendants argue the amended complaint should be dismissed on two grounds: for failing to state a claim on its own, and because it is barred by the statute of limitations.

**I. Because the amended complaint is devoid of facts establishing the likelihood that pentobarbital will cause a mid-execution seizure, Johnson fails to state a plausible claim.**

The Eighth Amendment prohibits the State from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. A prisoner may challenge an execution protocol as applied to him. *Bucklew v. Lombardi*, 783 F.3d 1120, 1127 (8th Cir. 2015) (en banc). To challenge an execution method as "cruel and unusual," a prisoner must establish that the method is "sure or very likely to cause serious illness and needless suffering." *Glossip v. Gross*, 135 S.

Ct. 2726, 2737 (2015) (emphases removed).[2] Put differently, the execution method must present "sufficiently imminent dangers" or a "substantial risk of serious harm." *Id.*

As a threshold issue, Defendants contend the Court cannot consider part of the amended complaint, specifically an attached affidavit from Johnson's examining anesthesiologist, Dr. Zivot. Defendants seize on critical comments the Court of Appeals previously made about Dr. Zivot's affidavit. For instance, it described his conclusions about the risk of harm as "equivocal," and concluded, "The attached affidavit of Dr. Joel Zivot fails to show a likelihood of success under the Eighth Amendment standard." *Johnson I*, 809 F.3d at 391.

Defendants conflate the procedural postures here and in *Johnson I*. *Johnson I* decided only whether Johnson was entitled to a stay of execution. *Id.* at 390. To do so, the Court of Appeals had to survey the evidence to see if he had shown "a significant possibility of success on the merits of his claim." *Id.* This was a high bar, as a stay is an "extraordinary remedy." *E.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The Court of Appeals, explicitly referencing the stay-of-execution standard, thought Dr. Zivot's claims were collectively unconvincing.

Here, on a Rule 12(b)(6) motion, the Court may not make such judgments. The Court must assume "that *all* the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (emphasis added). Accordingly, the Court of Appeals's commentary about the strength of Dr. Zivot's affidavit as evidence is not dispositive here.

Now, the Court can consider the plausibility of the amended complaint's allegations that the State's lethal injection protocol is sure or very likely to trigger seizures. (The Court will

---

[2] A § 1983 method-of-execution challenge must also plead an alternative method of execution that is "feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737 (alteration removed). Defendants concede for present purposes that Johnson has satisfied that element by identifying nitrogen-induced hypoxia.
6

assume for the moment that such seizures are sure or very likely to cause severe pain.) Defendants argue the amended complaint does not sufficiently address either issue, claiming "Johnson has pleaded a *conclusion* (pentobarbital will cause pain) not an *explanation* (pentobarbital will cause pain *because* . . .)." Defs.' Br. 4 (Doc. 33). The Court agrees.

The Court begins, as it may, "by identifying allegations that are no more than conclusions and therefore not entitled to the assumption of truth." *McDonough*, 799 F.3d at 945. This knocks out a huge chunk of Johnson's amended complaint, which repeatedly says pentobarbital poses a "substantial," "unjustifiable," "significant," and "likely" possibility of causing seizures, and has "the real potential to promote a seizure." *E.g.*, Am. Compl. ¶¶ 2, 49, 59; Aff. in Support ¶ 12. Because these lines simply parrot the legal standard ("substantial risk of serious harm") without further explanation, they are conclusions accorded no deference.

Thus remains the amended complaint's allegation that "pentobarbital create[s] a substantial and unjustifiable risk that violent and uncontrollable seizures could be triggered during the execution due to the [drug's] interaction with the remaining meningioma, scarring tissue and brain defect." Am. Compl. ¶ 21. The allegation's source is Dr. Zivot, who has both general experience in this field as a board-certified anesthesiologist, and specific experience with Johnson through his examination. With that experience, Dr. Zivot presumably knows what he is talking about when he opines on pentobarbital's propensity for "interacti[ng]" with Johnson's brain impairments and on the effects of those "interactions." *Id.* The Court can thus reasonably infer that either the pentobarbital will very likely induce Johnson's scarring tissue, brain defect, and remaining tumor to disrupt electrical activity in their corner of the brain, as they have sporadically done on their own, or else the pentobarbital will very likely take advantage of a electrical ecosystem in the brain weakened by those impairments.

7

While Johnson has pled that pentobarbital *can* theoretically trigger seizures on account of his impaired brain, he has pled no facts establishing the *probability* that pentobarbital will do that. He does not, for example, explain the effects of pentobarbital on seizures, on defective brains, on any brains, or on the body. He does not compare the rates of seizures in people given pentobarbital versus the rates of seizures in the public at large. Quite simply, there are no facts for the Court to draw any reasonable inference that the State's execution protocol is sure or very likely to trigger Johnson's seizures. Without that factual bedrock, the amended complaint fails to link pentobarbital and the frequency of seizures, and Johnson's claim does not move "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

By failing to describe the probability that the State's execution protocol will cause him a seizure, Johnson also ignores the "obvious alternative explanation" for a mid-execution seizure: his existing, eight-year-old propensity for non-pentobarbital-facilitated seizures. Given this pre-existing condition and the absence of facts suggesting otherwise, Johnson's allegations that he will have a seizure during the execution is "merely consistent" with his theory that Defendants will induce it. *See id.* at 557.

All Johnson offers are conclusory assurances that the execution will trigger a seizure with the level of certainty required by *Glossip*; that is, he offers mere "formulaic recitation[s] of the elements of a cause of action." *Id.* That leaves only the "sheer possibility" that pentobarbital is sure or very likely to trigger seizures, which cannot pass Rule 12(b)(6) muster. *See Iqbal*, 556 U.S. at 678. The amended complaint therefore fails to state a claim. *See id.*; *Zink*, 783 F.3d at 1099–1101 (affirming the dismissal of a complaint which supposed the state's legal injection drugs could be contaminated or improperly prepared and thus cause the plaintiffs pain, because those potential flaws were hypothetical and thus not "sure or very likely" to occur); *Whitaker v.*

*Livingston*, 732 F.3d 465, 468 (5th Cir. 2013) (holding that the pleading of "known unknowns" associated with execution-drug contamination was insufficient hypothesizing, and that the "plaintiffs must point to *some* hypothetical situation, based on science and fact, showing a likelihood of severe pain"), *cited with approval in Zink*, 783 F.3d at 1102.

Since this is the second time the Court is dismissing Johnson's complaint for failing to state a plausible claim to relief, the Court will afford him one more chance to file a *Twombly*-compliant pleading. *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550–51 (8th Cir. 1997). Johnson will have twenty-one days to do so.

## II. Because the face of Johnson's amended complaint does not establish when the State adopted the protocol that will allegedly cause him cruel and unusual punishment, the statute of limitations does not bar his claim.

Each time Defendants have moved to dismiss Johnson's complaint, including here, they have raised a statute of limitations argument. Although the Court could simply dismiss the amended complaint on *Glossip* grounds and pretermit the statute of limitations issue, the Court will address it here because it is fully briefed and likely to rise again.

Defendants argue that the time for Johnson to bring this claim has long since expired. "Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011). Thus, "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Id.*

This raises the question of what length of a limitations period applies to Johnson's claim. "[T]he applicable statute of limitations governing method-of-execution Eighth Amendment claims" is a question the Eighth Circuit "has not addressed." *Bucklew*, 783 F.3d at 1128. Notwithstanding, the limitations period for § 1983 lawsuits is generally the applicable state-law limitations period for personal-injury torts, *Wallace v. Kato*, 549 U.S. 384, 387 (2007), which in

9

Missouri is five years, Mo. Rev. Stat. § 516.120(4). The parties agree that five years is the applicable limitations period, and the Court concurs. *See also Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014).

The limitations clock in § 1983 cases begins ticking "when the plaintiff has a complete and present cause of action," which is "when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (internal quotation marks omitted). Applied here, that would be when the State first selected a method of execution that was sure or very likely to cause Johnson excruciating pain. *See also Wellons*, 754 F.3d at 1263 ("[A] method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially change[d] execution protocol.").

Defendants argue the State has used lethal injection since well before he began having health issues in 2008, so Johnson's claim accrued no later than August 2013, five years after his surgery and two years before he filed this lawsuit. Johnson does not disagree that at all relevant times, the State has carried out executions via lethal injection.

However, the nub of his claim is not that lethal injection *per se* poses a risk; it alleges that pentobarbital *specifically* poses a risk due to the unique interactions the drug will have with his brain condition. And the amended complaint does not disclose when, exactly, the State adopted this protocol and thus first gave rise to a possible *Glossip* claim. It may have been using pentobarbital, or a pharmacological equivalent, for several years. But "whether a significant change has occurred in a state's method of execution is a fact dependent inquiry." *Id.*; *cf. id.* at 1263–64 (finding on the facts of that case the statute of limitations barred a condemned prisoner's suit because the change in protocol he alleged was from "non-adulterated chemicals" to "adulterated chemicals," not from one type of chemical to another).

10
Case 2:15-cv-04237-DGK   Document 40   Filed 09/30/16   Page 10 of 11

Defendants counter that pentobarbital is nothing more than a fast-acting barbiturate, and "[b]efore and after 2013, Missouri used a fast-acting barbiturate in executions." Defs.' Reply Br. 7 (Doc. 39). While probably dispositive if true, that fact does not appear anywhere in Johnson's complaint.

Finally, Defendants argue that "Johnson knew, or should have known, in 2008 that he was subject to a lethal injection protocol that used a fast-acting barbiturate." Defs.' Br. 7 (Doc. 33). But absent a date pinpointing when the State adopted its current execution protocol, the amended complaint offers no facts to raise a plausible claim that Johnson reasonably should have investigated the effects that protocol will have on him and his brain. *See Phila. Indem. Ins. Co. v. Greater KC LINC, Inc.*, No. 15-CV-947-W-DGK, 2016 WL 3129290, at *1 (applying *Twombly* to affirmative defenses, and collecting cases).

The Court cannot tell, from the face of the amended complaint, when the five-year limitations period began running. The amended complaint thus does not establish a statute of limitations defense, and the Court cannot dismiss on this ground.

## Conclusion

In view of the foregoing, Defendant's motion to dismiss (Doc. 33) is GRANTED. Johnson's complaint is DISMISSED without prejudice.

Johnson is ORDERED to file an amended complaint addressing the deficiencies outlined in this Order no later than October 21, 2016. Johnson is advised that any future complaints which are dismissed under Rule 12(b)(6) may be dismissed with prejudice.

**IT IS SO ORDERED.**

Date:  September 30, 2016               /s/ Greg Kays
                                        GREG KAYS, CHIEF JUDGE
                                        UNITED STATES DISTRICT COURT